## THE DISTRICT COURT OF GUAM

| | |
|---|---|
| NOU XIONG, next friend for V.L.; V.L., on their own behalf and on behalf of others similarly situated, | CIVIL CASE NO. 25-00026 |
| Petitioners-Plaintiffs, | |
| vs. | **DECISION & ORDER DENYING RESPONDENTS-DEFENDANTS' MOTION FOR SANCTIONS ON COUNSEL FOR PETITIONERS-PLAINTIFFS** |
| COLONEL ALAN P. BORJA, in his official capacity as Warden of the Guam Department of Corrections, Hagåtña Detention Facility; SERGIO ALBARRAN, in his official capacity as Field Office Director of U.S. Immigration and Customs Enforcement;[1] and DOES 1-10, | |
| Respondents-Defendants. | |

Before the court is Respondents-Defendants' (collectively, "the Government") Motion for Sanctions on Counsel for Petitioners-Plaintiffs, Joshua J. Schroeder. ECF No. 34. Petitioners-Plaintiffs filed an Opposition to the Government's motion, and the Government filed its Reply. ECF Nos. 42 & 43. Upon review of the filings and the relevant law, the court finds this matter suitable for submission without oral argument. For the reasons stated below, the court hereby

---

[1] At the June 7, 2025 hearing, counsel for Stephen Green and Ken Sherman informed the court that Sergio Albarran is the new U.S. Immigration and Customs Enforcement Field Office Director overseeing Guam. As such, Mr. Albarran is substituted under Federal Rule of Civil Procedure 25(d).

**DENIES** the Government's motion.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

V.L. is a Hmong man who legally immigrated to the United States from a Thai refugee camp as a child in December 1987. Am. Pet. at 3, ECF No. 5; Mot. for Sanctions at 7, ECF No. 34; Opp. to Mot. for Sanctions at 6, ECF No. 42. He entered the country as a lawful permanent resident with a green card.[2] ECF No. 42, at 6.

On September 25, 1998, V.L. was convicted of attempted murder in the state of California. Gov't Ex. A at 9, ECF No. 16-1. As a result, he was sentenced to twenty-two years of imprisonment. ECF No. 34, at 2.

On February 27, 2018, the U.S. Department of Homeland Security served V.L. with a notice to appear for his removal proceedings brought pursuant to the Immigration and Nationality Act ("INA"). ECF No. 16-1, at 6-7. On March 20, 2018, the immigration judge ordered V.L.'s removal to Laos. ECF No. 34-2, at 1. V.L. waived his right to appeal the immigration judge's order, and he remained in the country under an Order of Supervision. ECF No. 34-2, at 2; ECF No. 34-1; Decl. of Att'y Joshua J. Schroeder at 7, ECF No. 42-3.

U.S. Immigration and Customs Enforcement detained V.L. in April 2025. ECF No. 34, at 3. On April 19, 2025, V.L. received a Warning for Failure to Depart and on May 6, 2025, he received a Notice to Alien of File Custody Review. ECF No. 16-2, at 10-14. V.L. called Nou Xiong, on May 24, 2025, telling her that he would be removed to Laos the next morning, May 25, 2025. ECF No. 5, at 3.

### B. PROCEDURAL BACKGROUND

On May 25, 2025, the Petitioners-Plaintiffs filed a petition for a writ of habeas corpus in

---

[2] Petitioner, however, is a citizen of Laos, not the United States. ECF No. 16-1, at 9.

the Northern District of Texas where V.L. was then being detained in the Prairieland Detention Center. ECF No. 34, at 3; ECF No. 5, at 2. Petitioners-Plaintiffs presented twenty claims for relief in the petition; all predicated upon Executive Orders and Proclamations invoking the President's authority under the Aliens Enemies Act ("AEA").[3] Pet. N.D. Tex. at 50-68, ECF No. 17-2. Petitioners-Plaintiffs then filed motions for a temporary restraining order and for class certification. ECF No. 42-3, at 16. The Northern District of Texas ordered the government to not remove V.L. from the United States, and it scheduled a hearing for the matter. *Id.*

On May 26, 2025, the government filed an Emergency Request for Phone Conference and Clarification of Temporary Restraining Order asking for a "conference to clarify whether removal under authorities other than the Alien Enemies Act (AEA) [was] permissible."[4] ECF No. 16-1, at 1. The government informed the District Court for the Northern District of Texas that they were not removing V.L. pursuant to the AEA but were instead removing him under the INA. *Id.* The government attached V.L.'s removal order, notice to appear, and his criminal records to the request. *Id.* at 4-11. After proffering this evidence, the government contended that it should be allowed to remove V.L. to Laos pursuant to the INA removal order.[5] *Id.* at 1-2.

The Northern District of Texas reviewed the government's emergency request and denied V.L.'s motion for a temporary restraining order. ECF No. 16-3. The court there held that V.L. failed to establish a sufficient likelihood of success on the merits because the government proffered evidence that V.L. was being removed pursuant to the respondents' INA authority. *Id.*

---

[3] Petitioner's main contentions are tied to Proclamation 10903, "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua," which draws its authority from the AEA to remove Venezuelan citizens who are fourteen years or older and members of Tren de Aragua from the United States. ECF No. 5, at 20.

[4] Counsel for Petitioners-Plaintiffs, Joshua J. Schroeder, stated that he missed the government's phone call before it filed this emergency request, and that it filed the request *ex parte* without his consent. ECF No. 42-3, at 18.

[5] That same day, the government flew V.L. from Texas to Guam. ECF No. 42-3, at 16. V.L. disembarked from the plane in Guam and the plane continued to Laos without him because of the order from the Northern District of Texas blocking his removal from the country. ECF No. 34, at 9. The government held V.L. in the Hagåtña Detention Center while he was on Guam. *Id.*

at 3-4. Having decided the issue, the court cancelled its previously scheduled hearing on the matter. ECF No. 42-3, at 4.

Later that same day, May 26, 2025, Petitioners-Plaintiffs filed a Renewed Emergency Application for a Temporary Restraining Order. Gov't Ex. E at 1, ECF No. 16-5. In the renewed motion, they argued that the "assumptions based on the civil nature of the INA processes no longer exist" and that "every person subject to INA processes are due notice and an opportunity to challenge the actions of the executive under military powers." *Id.* at 2-3. They further stated that notice of V.L.'s removal "was not served on [his] counsel and no notice was given to explain how the removal … complies with U.S. treaty obligations that preclude torture and removal to a place where torture and death are likely to occur." *Id.* at 3. On June 4, 2025, the court for the Northern District of Texas dismissed Petitioners-Plaintiffs' habeas petition finding that the Petitioners-Plaintiffs lacked subject matter jurisdiction to challenge the removal pursuant to 8 U.S.C. § 1252 of the INA.[6] Gov't Ex. G, at 2-4, ECF No. 16-7.

While the renewed application was pending, Petitioners-Plaintiffs initiated proceedings in this court by filing a habeas petition on June 1, 2025. Pet., ECF No. 1. The next day, on June 2, 2025, they filed the First Amended Petition for Writ of Habeas Corpus, and realleged the twenty claims for relief predicated upon the AEA – which were almost identical to the twenty claims they brought in the Texas case. *Compare* ECF No. 5 at 52-72, *with* ECF No. 17-2 at 50-68. They also filed an Emergency Motion for Temporary Restraining Order and an Emergency Motion to Certify Class where they alleged that V.L. and his proposed class were "military detainees" subject to "immediate, summary removal, disappearance, or extraordinary rendition from the United States pursuant to the AEA."[7] ECF No. 6, at 3; ECF No. 7. Accordingly, this court

---

[6] V.L. had been given the opportunity to reply to the government's INA jurisdiction argument. ECF No. 22-6.

[7] Mr. Schroeder averred that V.L.'s "criminal history and immigration status [were] unclear" to him at the time of

ordered the Government to not remove V.L. from the "District of Guam without advance notice of the intended move." ECF No. 8.

On June 5, 2025, the Government filed its Opposition in the present case to Petitioners-Plaintiffs' Emergency Motion for Temporary Restraining Order arguing that V.L. was "seeking a second, or rather third, bite at the proverbial apple." ECF No. 16, at 2. The Government further asserted that the "request for a TRO is baseless as [V.L. was] well-aware that [his] removal [was] pursuant to Title 8 of the U.S. Code, and more specifically the Immigration Nationality Act - not the Alien Enemies Act." *Id.* On June 6, 2025, Petitioners-Plaintiffs filed their Reply, contending that the Government was not following its own laws, including both the AEA and the INA. ECF No. 18, at 8. Moreover, they asserted that "[i]nitiating a Title 8 removal order does not absolve the Government from finding an appropriate location to remove individuals to, as well as its legal duty under the Administrative Procedures Act."[8] *Id.* at 9. They also noted that this court had jurisdiction over this Amended Petition through the Suspension Clause. *Id.* at 4-6.

On June 7, 2025, this court held its hearing on the Emergency Motion for Temporary Restraining Order and Emergency Motion to Certify Class. ECF No. 20. At the Saturday hearing, Mr. Schroeder appeared for V.L. and waived his client's presence at the hearing. Transcript of Proceedings at 8, ECF No. 32. The U.S. Attorney's Office for the Districts of Guam and the Northern Mariana Islands and the Office of the Attorney General of Guam appeared for Defendants-Respondents. *Id.* at 5-6.

Mr. Schroeder argued that the INA removal order was pretextual,[9] and the Government

---

the filing of the emergency motions. Decl. of Joshua J. Schroeder, at 2, ECF No. 6-2.

[8] Petitioners-Plaintiffs commented that it "appears that the Government cites to Title 8 as an apparent legal basis to accomplish process-less death sentences, indefinite detentions, torture, and other horrors without due process or the opportunity to be heard." ECF No. 18, at 16.

[9] Mr. Schroeder confirmed after the court questioned him multiple times directly that he received "notice through

relied on the AEA to remove V.L. *Id.* at 12, 32. He reached this conclusion for two reasons. First, the Government did not have the authority to "remove someone to a place where they're likely to be killed, tortured, you know, indefinitely detained or whatnot." *Id.* at 23. Second, the Government could not remove individuals "to Laos or anywhere else without the sovereign consent of those nations." *Id.* at 23-24. He argued that his client was being treated like "some sort of enemy combatant" under the AEA, and the fact that President Trump imposed a travel ban on the country of Laos,[10] V.L.'s country of origin, demonstrated that the Government had no intention of following the traditional INA removal process.[11] *Id.* at 8-9. Because he believed that his client could not be removed to Laos, Mr. Schroeder asserted that that his client was due additional notice and an additional opportunity to be heard after his notice of removal "to make sure that if" V.L. was being removed, he would not "be removed somewhere dangerous or to a war zone."[12] *Id.* at 14-15. When repeatedly pressed by the court on the issue of jurisdiction, Mr. Schroeder asserted that his client had jurisdiction to bring his claims under the AEA based on *Boumediene v. Bush* and the Suspension Clause of the Constitution. *Id.* at 13, 29, 48-49.

---

this court proceeding and through the proceeding that happened in the Northern District of Texas about why" the Government was removing his client under the INA, but he maintained that this client was a "part of a group of people who [were] not removable or were determined not to be removable." ECF No. 32, at 14. Mr. Schroeder also stated that he "had a little history [with the case] because … the crime comes from California" and yet he still had "reason to believe that [the basis for his client's removal] was the AEA and war powers, proclamations and the idea that my client was an enemy of the state or an enemy alien or something like that." *Id.* at 16-17, 20.

[10] Traditionally, under the INA, the United States would not remove an individual to a country that does not accept removals or to a country that would torture the individual. ECF No. 42, at 6. DHS would instead place that individual under an Order of Supervision until such time that removal became feasible. *Id.*

[11] Petitioner relied on other additional circumstantial evidence to contend that his INA removal was pretextual. ECF No. 32, at 32. For example, he argued that the President Trump ordered non-Venezuelans, thus not semantically subject to the President Trump's Proclamation 10903, to be sent to Centro de Confinamiento del Terrorismo ("CECOT") in El Salvador. *Id.* This meant that Petitioner, a non-Venezuelan could also be sent to CECOT, according to Mr. Schroeder's analysis. Mr. Schroeder also cited to the high-profile case of Kilmar Abrego Garcia as another example of the Government ignoring the typical process for removals as justification for his argument that the Government here was not following the traditional INA removal process. *See* ECF No. 42-3, at 7.

[12] Mr. Schroeder argued that this was "not a normal immigration way of handling a removal" and that notice of his client's removal coming through the habeas judicial process is "not sufficient notice." ECF No. 32, at 20-21.

The Government countered that "[t]his is an appeal of a Title 8 removal disguised as a habeas petition under Title 50." *Id.* at 36. The evidence demonstrated that V.L.'s "removal [was] under the INA [through] both his notice to appeal and the order of removal, which the petitioner was well aware of before filing his petition in this court." *Id.* at 37. This conclusion was further supported by the fact that V.L. was neither Venezuelan nor a member of Tren de Aragua, meaning Proclamation 10903 did not apply to him. *Id.* The Government asserted that any argument to the contrary was "pure conjecture and speculation" which was directly refuted by its evidence. *Id.* at 38. The Government confirmed that V.L. was being removed to Laos[13] and stated that the court had no jurisdiction to review his removal order under the INA.[14] *Id.* at 38-39 (the Government answered affirmatively when asked if V.L. was going to Laos).

After the hearing, Petitioners-Plaintiffs filed a Motion for Stay Pending Appeal. ECF No. 21. On June 9, 2025, the court denied the Emergency Application for Temporary Restraining Order, Emergency Motion to Certify Class, and Motion for Stay Pending Appeal, and dismissed the habeas petition with prejudice. ECF No. 25. The court reasoned Petitioners-Plaintiffs failed to show a likelihood of success on the merits as the Government produced evidence demonstrating that V.L.'s removal was occurring under the INA. *Id.* at 6. It also stated that Petitioners-Plaintiffs could not represent a class because he "failed to show commonality, typicality, and adequacy" as he was being removed under the INA, not the AEA. *Id.* at 7. Lastly, the court concluded that Petitioners-Plaintiffs failed to establish jurisdiction for his claims because of the jurisdiction-stripping provisions of the INA. *Id.*

Petitioners-Plaintiffs appealed the court's decision to the Court of Appeals for the Ninth

---

[13] The Government later stated "he was intended to be moved to Laos and that was the plan. I don't know what will happen from here on out." ECF No. 32, at 53.

[14] The Government alleged that the Petitioner wanted to "use this run-of-the-mill Title 8 removal to jump into the national fray and challenge the president's proclamations under the AEA." ECF No. 32, at 40.

Circuit which affirmed this court's decision on jurisdictional grounds. ECF Nos. 28, 44. The court must now consider the Government's Motion for Sanctions on Counsel for Petitioners-Plaintiffs. ECF No. 34.

## II.   LEGAL STANDARD

The court can sanction attorneys under 28 U.S.C. § 1927 and its inherent authority. *Macedo v. Dolgen Cal., LLC*, No. 1:23-cv-00840, 2025 WL 2203021, *7-8 (E.D. Cal. 2025). Sanctions under 28 U.S.C. § 1927 and the court's inherent authority are reserved for "extraordinary" circumstances. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (simplified); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."). "The Ninth Circuit has not addressed the burden of proof required for compensatory sanctions, but a finding of bad faith by clear and convincing evidence is sufficient." *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F.Supp.3d 899, 925 (N.D. Cal. 2023) (citing *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010)).

## III.   DISCUSSION

The Government requests that this court impose sanctions on V.L.'s attorney, Mr. Joshua J. Shroeder, pursuant to 28 U.S.C. § 1927 and the court's inherent authority. ECF No. 34, at 23-24. The Government alleges that Mr. Schroeder knowingly or recklessly made frivolous arguments. *Id.* at 17. The Government focuses on three different examples. First, Mr. Schroeder had notice about V.L.'s INA removal at least six days before filing the initial petition here because of the government's filings in the Texas case, and the Government argues that Mr. Schroeder should have performed an inquiry into V.L.'s removal.[15] *Id.* at 17-18; *see also* ECF No. 43, at 2-3. Second, the Government argues that Mr. Schroeder's AEA arguments were

---

[15] Mr. Schroeder was aware of V.L.'s order of removal prior to filing this habeas petition. ECF No. 42-3, at ¶ 25.

meritless because the AEA could not have possibly applied to Mr. Schroeder's client who was neither a Venezuelan nor a member of Tren de Aragua. *Id.* at 17. Third, the Government asserts that Mr. Schroeder's jurisdictional arguments were baseless, yet he continued to argue them regardless. *Id.* at 19.

The Government also alleges that Mr. Schroeder made these frivolous arguments for an improper purpose. *Id.* at 20-21. It contends that Mr. Schroeder engaged in this litigation "to delay the government's lawful execution of [the Petitioner's] removal to Laos" and he did so with persistent stubbornness demonstrating bad faith. *Id.* The Government cites to Mr. Schroeder's repeated filings, even after the Northern District of Texas found that it did not have subject matter jurisdiction, as evidence of frivolousness with an improper purpose. *Id.* at 19, 21. Imposition of sanctions here would "deter attorneys from bringing groundless actions to delay or defeat the enforcement of the law." *Id.* at 23.

In its reply brief, the Government further argued that Mr. Schroeder had not previously mentioned the Order of Supervision and that he "did not cite Laos's historical refusal to accept deportees from the United States as a reason to distrust that the government was removing V.L. to Laos until after this Court dismissed the petition." ECF No. 43, at 3-5.

Mr. Schroeder counters that he zealously advocated for his client "to secure notice and ordinary process amid acknowledged uncertainty about authority and destination."[16] ECF No. 42, at 13. He described his filings as "narrow" and appropriate under the circumstances as there "was no discovery, no duplicative motion practice, and no effort to keep collateral disputes alive once issues [were] mooted." *Id.* He further states that the Government has failed to provide "evidence of subjective bad faith" as required, and that the Government has also failed to provide

_____

[16] In addition to his Opposition brief, Mr. Schroeder provided a lengthy declaration on his own behalf and declarations from several legal professionals who contend that he did not act with subjective bad faith and that his belief that the United States would not remove individuals to Laos was reasonable. ECF No. 42-3, 42-4, 42-5, 42-6.

a dollar amount or other accounting method for its incurred costs. *Id.* at 11, 14. Accordingly, he asks the court to deny the Government's motion with prejudice. *Id.* at 16-17.

### A. SECTION 1927

Section 1927 of Title 28 of the United States Code grants courts the authority "to hold attorneys personally liable for fees and costs incurred as a result of their misconduct." *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1153 (9th Cir. 2024). Specifically, the court can sanction any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously."[17] 28 U.S.C. § 1927. Under this statute, the court can require the attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.*

The Ninth Circuit has "held that '[s]anctions pursuant to section 1927 must be supported by a finding of subjective bad faith.'" *Lake v. Gates*, 130 F.4th 1064, 1070 (9th Cir. 2025) (quoting *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015)). Bad faiths means "an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* Frivolous arguments "for the purposes of § 1927 sanctions … are 'baseless and made without reasonable and competent inquiry' or made up of 'legal or factual contentions so weak as to constitute objective evidence of improper purpose.'" *Caputo*, 96 F.4th at 1155 (quoting *In re Girardi*, 611 F.3d 1027, 1062 (9th Cir. 2010)). As the Ninth Circuit has noted, however, "carelessly, negligently, or unreasonably multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d at 1061.

The court finds that Mr. Schroeder did not knowingly or recklessly raise frivolous arguments, and, therefore, he did not have subjective bad faith as necessary for a sanction under

---

[17] Section 1927 sanctions "cannot be applied to an initial pleading." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 435.

28 U.S.C. § 1927. The court further finds that Mr. Schroeder did not have an improper purpose in filing the petition or any of the related motions. Mr. Schroeder worked in an expedited manner in an attempt to best preserve his client's rights. While his filings could have been more diligently prepared, better articulated, and more clearly organized, the court does not find that this is one of those exceptional circumstances that warrant sanctions under 28 U.S.C. § 1927.

Mr. Schroeder's arguments are more extensive than the Government's simplified, factual assertions as noted above. Mr. Schroeder argued that the lack of process exhibited in V.L.'s removal demonstrated that his removal was occurring outside of the traditional INA process and was instead occurring under the AEA. He contends that, under the circumstances, he reasonably argued that his client could not be removed under the INA "due to Laos's refusal to accept deportees." ECF No. 42-3, at ¶ 25. At the hearing, Mr. Schroeder argued that "Laos has generally rejected removals because the Hmong people who are in this country are here because they took sides in the war against [Laos]." ECF No. 32, at 23.

Mr. Schroeder further asserts that his arguments regarding notice and process were also reasonable because his client was subject to an Order of Supervision and because his client would be subject to torture if he was returned to Laos as a Hmong man. ECF No. 32, at 14. He supported these conclusions with his own personal experience as an immigration attorney and based on his consultation with another immigration attorney.[18] ECF No. 42-3, at ¶ 14. He also supported these conclusions based on media stories suggesting the Government violated court orders to illegally remove people to South Sudan and El Salvador. ECF No. 5, at 21, 34, 50.

Mr. Schroeder provided a lengthy dissertation on the history of habeas corpus in the Amended Petition, and he concluded that the Government's removal of V.L. without the

---

[18] Mr. Schroeder supported his AEA claims with other circumstantial evidence to demonstrate that the Government was no longer conducting typical INA deportations. *See supra* note 12.

opportunity to be heard before a federal court would result in the suspension of habeas corpus in violation of the Suspension Clause of the Constitution. ECF No. 5, at 57. He developed the history of the doctrine and cited Supreme Court precedent. *See generally* ECF No. 5. His legal argument failed, but he made a good faith argument of what he contends the law should be, and this is not a sanctionable offense. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830-31 (9th Cir. 1986) ("[T]he pleader need not be correct in his view of the law … [he] must have a 'good faith argument' for his or her view of what the law is, or should be.").

Although this court and the court in the Northern District of Texas ultimately disagreed with counsel and concluded that this was a typical INA removal based on the evidence presented by the Government, the court does not find Mr. Schroeder's arguments to be completely baseless or that he did not conduct a competent inquiry. Counsel relied on circumstantial evidence and his own professional experience to argue zealously on behalf of his client because he hoped to preserve his client's right to due process of the law. *See Lake*, 130 F.4th at 1071 (Bumatay, J., dissenting) ("But asserting an *unpersuasive* claim is different from asserting a *sanctionable* one.") (emphasis in the original). Considering the expedited nature of this case and the good faith arguments presented by counsel, Mr. Schroeder's conduct was reasonable.

### B. INHERENT AUTHORITY

Courts have the "inherent power to 'fashion an appropriate sanction for conduct which abuses the judicial process.'" *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1148 (9th Cir. 2024) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). A monetary sanction based on the court's inherent authority must be based on "either '(1) a willful violation of a court order; or (2) bad faith.'" *Id.* (quoting *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021)). A finding of bad faith, or "conduct tantamount to bad faith," can be based on a "broad range of willful improper conduct" like frivolousness, "vindictiveness, obduracy, or mala

fides." *Fink v. Gomez*, 239 F.3d 989, 992, 994 (9th Cir. 2001). A court awarding a compensatory sanction "must 'apply a "but-for" causation standard,' tracing the compensation back to the sanctionable conduct of the party or attorney."[19] *Id.* (quoting *Am. Unites for Kids*, 985 F.3d at 1089-90).

As stated above, the court does not find that Mr. Schroeder acted in bad faith in pursuing this habeas petition on behalf of his client. First, Mr. Schroeder's arguments regarding the AEA, while unpersuasive, were colorable based on the circumstantial evidence he offered to support his allegations. Second, Mr. Schroeder's jurisdictional arguments, while also unpersuasive, were made in good faith as he supported his conclusions with discussions on common law, natural law, and precedential opinions related to the Suspension Clause.

Mr. Schroeder identified several reasons for why his client was actually being removed under the AEA. For example, the country of Laos had "refused to accept deportees for decades" and Petitioner's Hmong background made it even more unlikely for him to be sent to Laos because he would possibly be considered an enemy of the country of Laos. ECF No. 42-3, at ¶ 27. Thus, DHS could not remove the Petitioner to Laos pursuant to V.L.'s INA removal order because Laos had historically not accepted removals from the United States and because the INA does not allow for removals to a country for an individual who would be at risk of torture unless there is additional process. ECF No. 32, at 23; *see also id.* at 14-15 (describing how the proper INA protocols were not being followed for an individual designated to be "removed somewhere dangerous"). Mr. Schroeder also highlighted at the hearing that the Government was ignoring the INA in other high-profile examples, like for Kilmar Abrego Garcia, who Mr. Schroeder contends was removed in contravention of the law. *See id.* at 33-35. While the court ultimately found the

---

[19] Courts can rely on the but-for standard in "exceptional cases" to "shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017).

Government's evidence to be persuasive, Mr. Schroeder's arguments were not completely without merit, and the court finds that they were not made in bad faith.

Mr. Schroeder's jurisdictional arguments pushed against the current precedent on subject matter jurisdiction in habeas cases. This is permissible when a party has a good faith argument for what the law is or what the law should be. *See Zaldivar*, 780 F.2d at 830-31. Mr. Schroeder developed the common law history of the right to habeas corpus relief and outlined many of its natural law principles. *See generally* ECF No. 5. He then cited Supreme Court precedent on federal court jurisdiction related to the Suspension Clause of the Constitution to argue that his client's claims should be heard. *See also* ECF No. 32, at 29-30 (arguing at the hearing that his client's claims were properly before the court based on the Suspension Clause and the Supreme Court's holding in *Boumediene v. Bush*). The court chose to follow the precedent that it found to be more applicable to the facts of the present case, but Mr. Schroeder's arguments were not meritless and are not deserving of sanction where, as here, the court finds that Mr. Schroeder made the arguments in good faith. Accordingly, the court does not find it appropriate to sanction Mr. Schroeder using its inherent authority.

## IV.    CONCLUSION

For the foregoing reasons, the court finds that Mr. Schroeder did not have the requisite bad faith for sanctions. As such, the court **DENIES** the Government's motion with prejudice.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: Apr 20, 2026**